UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KENNETT TRUCK STOP, ) <br> ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ALAN WEISS et al., ) <br> ) <br> Defendants. ) | Case No.: 4:21-cv-00177-RLM-DML |

<u>OPINION AND ORDER</u>

Plaintiff Kennett Truck Stop, Inc. filed a Verified Complaint asserting various claims under 28 U.S.C. § 1983 against fifteen current and former local officials of the City of Greendale, Indiana in their individual capacities for alleged violations of the Fifth and Fourteenth Amendments of the United States Constitution. Kennett also asserts state law claims for violations of Sections 21 and 23 of Article I of the Indiana Constitution and seeks judicial review of the denial of its improvement location permit under Indiana Code § 36-7-4-1600. Kennett seeks compensatory and punitive damages, attorney's fees, and injunctive relief.

The claims asserted in the complaint all arise from the alleged wrongful denial of Kennett's application for an improvement location permit. The improvement location permit would let Kennett to use gravel treated with soybean oil instead of asphalt to finish a parking lot at its property. The defendants have moved to dismiss Kennett's complaint for failure to state a claim upon which relief can be granted, and, for the following reasons, the court grants

the defendants' motion with respect to Kennett's complaint, with leave granted to Kennett to file an amended complaint if it wishes.

I. STANDARD OF REVIEW

A court considering a motion to dismiss under Rule 12(b)(6) construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor[1]. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). But Fed. R. Civ. P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. at 570). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. at 556). Twombly and Iqbal "require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011)

---

[1] The court doesn't consider the Chronology of Kennett Truck Stop [Doc. No. 25-1] and the Engineer Reports [Doc. No. 25-2] attached to Kennett's Response Brief [Doc. No. 25] as they aren't referenced in the complaint and aren't central to the claim. *See* Hecker v. Deere & Co., 556 F.3d 575, 582 (7th Cir. 2009).

2

(*quoting* Brooks, 578 F.3d at 581)). The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

## II.     STATEMENT OF FACTS

Accepting Kennett's well-pleaded facts as true, these are the facts of this case. Kennett owns two parcels of land: 1) a northeast parcel – the location of a gas station – and 2) a southern parcel – the location of pond and metal building.

Kennett applied for the improvement location permit in August 2020. The permit would have allowed Kennett to use INDOT #53 aggregate – a gravel substrate – to fill in depressions and facilitate surface drainage on the southern parcel to correspond with the development of the northeast parcel.

Shortly after Kennett applied for the permit, Greenwood City Manager Steve Lampert issued a letter denying the approval of the permit for two reasons: 1) Kennett's lot wasn't in compliance with Greendale Municipal Code § 155.038 – the requirement that the surface be paved with concrete or asphalt material, and 2) Kennett's plans didn't show any provision to treat the proposed stormwater runoff from the future parking lot as Greendale Municipal Code §§ 155.05-155.06 requires.

Representatives for Kennett and Kennett's engineer went before the Greendale City Council in March 2021. Greendale Code Enforcement Officer Jay McMullen (the building inspector) denied Kennett's permit for two reasons: 1) Kennett's lot wasn't in compliance with Greendale Municipal Code § 155.038

because INDOT #53 gravel isn't a concrete or asphalt material, and 2) the proposed permit didn't comply with the minimum green area, buffering, landscaping, and green area requirements set forth in Greendale Municipal Code §§ 155.128-155.131, and no drawings were submitted as required by those provisions. The denial letter was the first time since August 2020 that City representatives raised the issue of the parking lot surface despite ongoing conversations, meetings, and reports about the permit application.

Kennett alleges that the defendants caused it substantial financial harm, including thousands of dollars to employ and incur the cost of an engineer, and caused it harm by not allowing it to use the southern parcel as a parking lot. Kennett also alleges that the request for a permit was denied without justification, and that the City discriminated against it, because other similarly situated businesses in the area aren't being held to the same requirements.

### III.  DISCUSSION

#### A. Individual Defendants

Kennett's complaint doesn't plead allegations that allow the court to draw the reasonable inference that several of the defendants are liable on an individual basis for the alleged constitutional misconduct. Individuals can't be liable under Section 1983 unless they have a "personal involvement in the alleged constitutional deprivation." Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Cir. 2017) (*quoting* Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and

(2) the alleged misconduct." Id. (*citing* Wolf–Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)).

Nothing in Kennett's complaint supports a reasonable inference that many of the individuals listed as defendants violated Kennett's constitutional rights. Kennett alleges that it was damaged as a result of "city officials in violation of state and federal laws" [Doc. No. 1, ¶38], that the "city" or "city officials" are responsible for discriminating against Kennett, failed to adhere to their own ordinances and regulations, and have denied a proper permit. [Doc. No. 1, ¶¶41-46, 47-51]. Lumping defendants together in this manner is insufficient in Section 1983 claims where liability is predicated on an individual's actions, as suggested by Kennett's identification of multiple, individual defendants.

For example, Kennett names Mayor Alan Weiss as a defendant, but only alleges that he "made recommendations to City Council Members regarding the application for land usage of Kennett Truck Stop, Inc." [Doc. No. 1, ¶2]. No allegation explains how Mayor Weiss made any decision or acted to deprive Kennett of its constitutional rights. Mayor Weiss must have participated in the constitutional wrongdoing for liability to attach to him. Cygnar v. City of Chicago, 865 F. 2d 827, 847 (7th Cir. 1989). Similarly, Kennett names City council members Walt Wilson, Karen Abbott, Rebecca Barhorst, Kurt Mollaun, Brett Hamilton, Vince Karsteter, and Erin Marqua as individual defendants, but doesn't allege how they were involved in the denial of the permit. Aside from the introductory paragraphs, these individuals aren't named in the complaint. As a result, it's unclear how these individuals participated in the alleged

5

constitutional wrongdoing. The complaint alleges that City council members heard comments on the permit, but the members aren't alleged to have made a decision regarding the permit. [Doc. No. 1, ¶33]. Simply invoking the name of a potential defendant, as Kennett did with the listed City council members, isn't enough to state a claim on which relief can be granted. Collins v. Kibort, 143 F.3d 331,334 (7th Cir. 1998).

Kennett also alleges that former members of the City's staff – Clerk/Treasurer Mary Lynch, Former Mayor Doug Hedrick, Executive Director of Redevelopment/former council member Al Abdon, Redevelopment Commission President/Former council member Mike McLaughlin, and former Code Enforcement Officer Al Putnum – abused their positions to deny Kennett's constitutional rights. [Doc. No. 1, ¶¶10-13,15]. The complaint doesn't explain any causal connection between these individuals and the alleged misconduct. It doesn't identify how these individuals deprived Kennett of a constitutional right.

Lastly, Kennett refers to "the Defendant" multiple times in the complaint without identifying which defendant it is referring to. [Doc. No. 1, ¶¶53-55]. This isn't enough to provide notice, *see* Bell Atlantic Corp. v. Twombly, 550 U.S. 544,555 (2007), so claims against these individuals are dismissed.

That leaves Jay McMullen, the City's Code Enforcement Officer and Steve Lampert, the City Manager, as the remaining defendants.

### B. Kennett's Fifth Amendment Takings Claim

The court first turns to Kennett's Fifth Amendment Takings Clause claim. Kennett first alleges that the defendants denied the use of property Kennett owned and operated, in violation of the Fifth Amendment's Takings Clause. Kennett alleges that the City has interfered with its property rights under the Fifth and Fourteenth Amendments of the United States Constitution and the Indiana Constitution. Kennett's alleged deprivation is derived from potential economic profit derived from the rights granted through the permit.

Kennett must establish that there was a taking when the defendants denied Kennett's permit or otherwise limited Kennett's ability to use the southern parcel. There are two types of takings: a quintessential, or per se taking, and a regulatory taking. Muscarello v. Ogle Cty. Bd. Of Comm'rs, 610 F.3d 416, 421-422 (7th Cir. 2010). Kennett doesn't allege any physical invasion or seizure of property for a public use. It argues that its inability to park tractor trailers on the premises caused Kennett to lose out on thousands of dollars and doesn't allow Kennett to use its property as it intended, amounts to a regulatory taking.

To plead a regulatory taking, Kennett must allege that the defendants' regulation limits so much of some property right that the challenged government action deprives Kennett of all or substantially all practical uses of the property. Bettendorf v. St. Croix Cnty., 631 F.3d 421, 424 (7th Cir.2011); *see also* RDB Properties, LLC v. City of Berwyn, 844 F. App'x 878, 881 (7th Cir. 2021). To determine whether a regulation is a regulatory taking, the court weighs: 1) the economic impact on the claimant, 2) the extent of the regulation's interference

with investment-backed expectations, and 3) the character of the regulation. Penn Central Transp. Co. v. New York Cty., 438 U.S. 104 (1978). Under this test, Kennett's complaint doesn't allege a plausible regulatory taking.

### i. Economic Impact on the Claimant

Inferring such a regulatory taking is a tall order. Not every regulation that decreases property value qualifies for compensation. Penn Central Transp. Co. v. New York Cty., 438 U.S. at 144. Courts have dismissed suits that raise takings claims based on allegations of property-value losses. *See, e.g.*, RDB Properties, LLC v. City of Berwyn, 844 F. App'x at 881(re-zoning decision by local ordinance); Newark Cab Ass'n v. Newark, 901 F.3d 146 (3rd Cir. 2018) (loss of taxi-medallion value); Colvin Cattle Co. v. United States, 468 F.3d 803 (Fed. Cir. 2006) (lease-and-permit cancellations). To plead a regulatory taking, Kennett must point to some property right—not just some value—lost as a result of the City's actions. Newark Cab Ass'n v. Newark, 901 F.3d at 153. The economic impact on the claimant must be more than mere loss of property value. Kennett's complaint doesn't include sufficient allegations to meet this factor.

The economic impact on Kennett stems from the denial of Kennett's permit to use soybean oil and gravel to try to comply with the Greendale Municipal Ordinance. [Doc. No. 1, ¶¶35, 37]. Kennett's complaint alleges that it can't use the pavement on its property as it wishes, causing Kennett to incur substantial financial harm. [Doc. No. 1, ¶¶34-38]. But financial harm and loss in property value isn't enough to allege a regulatory taking.

Additionally, regulations aren't takings even when they prohibit the landowner from making "the most beneficial use of the property"—that is, the most value-producing use. Penn Central Transp. Co. v. New York Cty., 438 U.S. at 125. That Kennett can't use its property as a parking lot because it's not in compliance with the Greendale Municipal Code isn't the type of economic impact that amounts to a taking.

### ii. Extent of the Regulation's Interference with Investment-backed Expectations

The second Penn Central factor is the extent to which regulation interferes with distinct investment-backed expectations. Penn Central Transp. Co. v. New York Cty., 438 U.S. at 124. Kennett doesn't plead or argue that the denial of the permit interfered with investment-backed expectations. Kennett alleges that it sought to improve the property for uses stated in its City-approved purchase agreement. [Doc. No. 1, ¶¶42-43]. For a court to conclude that a regulation is a taking, Kennett's investment-backed expectations must be objectively reasonable. Goodpaster v. City of Indianapolis, 736 F.3d 1060, 1074 (7th Cir. 2013). It wouldn't be objectively reasonable for Kennett expect to be exempt from regulations set forth in the City's ordinance, including the requirements related to obtaining a permit for the desired use of the property. A property owner or future property owner is presumed to act with knowledge of the applicable ordinances. *See e.g.* Albery v. Reddig, 718 F.2d 245, 251 (7th Cir. 1983). Kennett's complaint doesn't clearly articulate the existence of investment-backed expectations, which points away from the existence of a regulatory taking.

9

### iii. Character of the Regulation

The third Penn Central factor asks whether the regulation should be characterized as a direct taking rather than an exercise of governmental discretion. RDB Properties, LLC v. City of Berwyn, 844 F. App'x at 882. A government action "characterized as a physical invasion by government" is more likely to be a regulatory taking. Penn Central Transp. Co. v. New York Cty., 438 U.S. at 124; *see also* Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 225 (1986) (finding the factor not met when "the Government does not physically invade or permanently appropriate [the] assets for its own use."). Kennett concedes that there is no physical invasion of the property, but argues that the regulation impairs the use of the property for commercial purposes. [Doc. No. 25, p. 4]. According to Kennett's complaint, Kennett would comply with the Greendale Municipal Code and so be able to use the parking if Kennett paved its parking lot with asphalt, instead of keeping it as gravel. [Doc. No. 1, ¶34]. Kennett's alleged deprivation is characteristic of an exercise of governmental discretion rather than a permanent invasion or limitation of use. Kennett doesn't allege governmental action which can be considered a taking under the Fifth Amendment. The potentially inconvenient or costly permit requirement required by the City is the type of exercise of governmental discretion that doesn't amount to a taking under the Fifth Amendment. The court grants defendants' motion to dismiss Kennett's Fifth Amendment Takings Clause claims.

### C. Kennett's Due Process Claims

During oral argument, Kennett clarified that it asserts a substantive due process claim, not a procedural due process claim in its complaint.

#### i. Protected Property Interest

Kennett must have a constitutionally protected property interest to assert a due process claim. Citizens Health Corp. v. Sebelius, 725 F.3d 687, 694 (7th Cir. 2013). Whether a plaintiff has a property interest protected by the Due Process or Takings Clause typically is "defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577(1972); Dibble v. Quinn, 793 F.3d 803, 808 (7th Cir. 2015) (due process). For purposes of due process, the complaint alleges that Kennett has an interest in the permit that it was denied and property ownership in the southern parcel.

To maintain a claim of property over a government-issued benefit, such as a license or permit, a plaintiff must show she has "a legitimate claim of entitlement to it," rather than "a unilateral expectation to it." Bell v. City of Country Club Hills, 841 F.3d at 717 (*quoting* Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577). That is, "a protected property interest exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." Id. at 719 (internal quotation marks and citations omitted); *see also* New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1480 (7th Cir. 1990) ("[U]nless it is

11

established that the plaintiffs had the right to receive the building permits, a federal cause of action does not exist.").

This isn't an instance in which Kennett had a "legitimate claim of entitlement" to the permit. Its alleged property interest only stems from the permit that it expected to receive, not that it was entitled to receive. An expectation doesn't establish a property interest. Under Greendale Municipal Code, a permit is only issued when it conforms with the Master Plan of the City. Greendale Municipal Code § 155.097(A). Kennett acknowledges in its complaint that City representatives stated on multiple occasions that Kennett's permit application doesn't comply with the requirement that its parking lot "must be paved with dust-proof or hard surface meeting standard specifications established by the city." Greendale Municipal Code § 155.038. At no point does Kennett assert that it has any right to receive the permit.

It doesn't appear that Kennett has a protectible property interest, but since the claim fails either way, the court will assume that it does.

### ii. Kennett's Substantive Due Process Claim

Substantive due process protects against government power arbitrarily and oppressively exercised, either through legislative or executive action. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). This limitation is modest and in the context of land-use decisions runs afoul of the Constitution only if the action would "shock the conscience." CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 488 (7th Cir. 2014) (discussing how standard

is synonymous with "arbitrary and capricious" and "random and irrational" standards, at least in land-use context). Before the court will consider if there was an arbitrary and irrational interference with property, Kennett must first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation. Gen. Auto Serv. Station v. City of Chicago, 526 F. 3d 991, 1001 (7th Cir. 2008). Kennett's complaint doesn't allege either.

First, Kennett doesn't contend that there is an inadequacy of state remedies. The court of appeals has held repeatedly that a plaintiff who ignores potential state law remedies can't state a substantive due process claim based on a state-created property right. CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 488–489 (7th Cir. 2014). An entity contending that state or local regulation of the use of land has gone overboard must look to state court. Id. at 489.

In its response to the dismissal motion, Kennett says that the city council's discriminatory practices and the inability to have a fair hearing in state court show an inadequacy of state remedies. But the complaint contains no factual support for that statement beyond conclusory legal statements. [Doc. No. 1, ¶¶48, 54]. Kennett had options under state law for obtaining the permit, but it didn't use those, or at least the complaint doesn't allege that it used them. *See e.g.* Ind. Code § 36-7-4-1602.

Second, Kennett doesn't allege an independent constitutional violation. As discussed throughout, Kennett's complaint doesn't properly plead a deprivation

13

of an independent constitutional violation. LaBella Winnetka, Inc. v. Vill. of Winnetka, 628 F.3d 937, 943 (7th Cir. 2010). Without such an allegation, Kennett must show that the decision to deny the permit was either arbitrary or irrational – that it shocked the conscience. Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. Gen. Auto Serv. Station v. City of Chicago, 526 F. 3d 991, 1001 (7th Cir. 2008).

Kennett argues that the determination to deny its permit application was arbitrary and capricious because it wasn't in compliance with the Indiana Department of Transportation's definition of hard surface and that the decision to deny the permit wasn't in alignment with the City's own code or ordinances. To go against the grain of the Indiana Department of Transportation when the City's municipal code doesn't have its own definition of "hard surface," Kennett argues, shocks the conscience. Kennett does not plead any regulation or guideline from Indiana Department of Transportation that the City was required to adhere to when analyzing the Kennett's permit application.

Kennett's complaint reveals that the denial of the permit was based on the City's interpretation of its own ordinance. Kennett alleges that the City cited several reasons for denying the permit application. Even if the City's interpretation of its own ordinance is erroneous, and the City should have used a definition set forth in Indiana Department of Transportation's regulations, the City's rational reason for denying the permit wouldn't become an irrational one.

14

Harding v. Cnty. of Door, 870 F.2d 430, 432 (7th Cir. 1989). Accordingly, the court grants defendants' motion to dismiss Kennett's Fourteenth Amendment substantive due process claims.

### D. Kennett's Equal Protection Claim

Kennett contends that it has been deprived of the Fourteenth Amendment's guarantee of equal protection. Although not stated outright, Kennett effectively makes a "class of one" equal protection claim. This claim largely mirrors Kennett's substantive due process claim.

The Equal Protection Clause generally prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." Brunson v. Murray, 843 F.3d 698, 705 (7th Cir. 2016). Since Kennett doesn't allege that it is part of a protected class, Kennett must show that it was 1) intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment or 2) that the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant. Nevel v. Vill. Of Shaumburg, 297 F.3d 673, 681 (7th Cir. 2002).

Kennett doesn't allege in its complaint that it is being treating differently with respect to the permit requirements because of personal or illegitimate animus, so the court turns to whether Kennett was treated less favorably than

similarly situated property owners and whether there is rational basis for the treatment. Similarly situated means "identical or directly comparable to [them] in all material respects." Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010). Kennett alleges broadly that other similarly situated business aren't being held to the same requirements. [Doc. No. 1, ¶39], but doesn't allege any pattern of misconduct or acts of overt hostility that exclude any rational explanation for why local officials targeted it. The complaint refers vaguely to others whose permit applications were treated differently but has no allegations about how those others were similar to the truck stop.

Further, there is a conceivable rational basis for the denial of Kennett's permit application; the permit application didn't comply with existing ordinance requirements. [Doc. No. 1, ¶¶29, 34; *see also* Greendale Municipal Code §§ 155.038, 05-06]. Kennett's proposed permit didn't meet Greendale Municipal Code's existing requirements. Federal courts "are not zoning boards of appeal" and, as such, "[s]tate and local land-use decisions are entitled to great deference when constitutional claims are raised in federal court." CEnergy–Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 487 (7th Cir. 2014) (internal quotation marks and citations omitted); *see also* Maum Meditation House of Truth v. Lake County, 55 F.Supp.3d 1081, 1089 (N.D. Ill. 2014) ("In general, zoning ordinances imposing restrictions on use and occupation of private land ... satisfy the rational basis test.") (citation omitted).

Accordingly, the court grants defendants' motion to dismiss Kennett's Fourteenth Amendment Equal Protection Clause claims.

### E. State Law Claims

Having dismissed (at least for now) all of the federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."); Hagan v. Quinn, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.' ") (*quoting* Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999)).

### F. Attorney's Fees

The defendants request attorney's fees because the lawsuit is frivolous, groundless, and unreasonable. [Doc. No. 24, p. 21]. As instructed during oral argument, the court will consider whether attorney's fees are appropriate upon separate motion by the defendants.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion to dismiss Kennett's complaint [Doc. No. 23] without prejudice and grants Kennett 21 days within which to amend its complaint.

SO ORDERED.

ENTERED: <u>July 19, 2022</u>

<u>/s/ Robert L. Miller, Jr.</u><br>
Judge<br>
United States District Court

Distribution to all electronically registered counsel of record.